UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
FRANKELS JOLIVERT,

                Plaintiff,

**MEMORANDUM and ORDER**

       - against -

CV 00-7467 (DRH) (WDW)

EDWARD RILEY, Sheriff of Nassau County
Correctional Center (Sheriff's Department), et al.,
C.O. Evans # 2107, JOHN DOE(S), JANE DOE(S),
(corrections officers), and all other prison officials,
employees of the Nassau County Correctional Center
that are Involved, individually and in their official
Capacities,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S:**

**FRANKELS JOLIVERT**
Plaintiff Pro Se
2284 Dutch Broadway
Elmont, New York 11003

**LORNA B. GOODMAN**
Nassau County Attorney
Attorney for Defendants
One West Street
Mineola, New York 11530
By: Lark Teitler, Esq., Deputy County Attorney

**HURLEY, District Judge:**

       Presently before the Court is the motion by defendants Edward Riley, Sheriff of

Nassau County Correctional Center ("Riley"), Correction Officers Evans, John and Jane Does,

and all other prison officials and employees of the Nassau County Correctional Center

(collectively, "Defendants") for an Order granting summary judgment and dismissing the

Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated below, the motion is granted and the Amended Complaint is dismissed in its entirety.

## BACKGROUND

The facts of this case are detailed in the Court's prior decisions, dated May 13, 2003, and December 17, 2003, familiarity with which is presumed. Thus, the Court will only state the facts necessary for disposition of the instant motion.

Plaintiff Frankels Jolivert ("Plaintiff") commenced this action *pro se* on December 18, 2000 against defendant Riley only. He alleged that on October 31, 2000, while incarcerated, a few correctional officers conducted a shakedown search of his prison cell, the purpose of which was to find a missing food tray. (May 13, 2003 Memorandum and Order at 2.) He further alleged that he was told to step out of his cell and take off all of his clothes, all in the presence of a female officer. (*Id.*) Based on these allegations, he complained that the search was conducted in an improper manner, leaving him humiliated and embarrassed. (*Id.*)

By Memorandum and Order dated May 13, 2003, the Court held that Plaintiff's Complaint failed to state a claim. Noting that Plaintiff did not contend that the search itself was invalid, the Court found that the mere presence of a female officer does not violate a prisoner's privacy right and thus cannot render a validly initiated strip search unconstitutional. (*Id.* at 4-5.) The Court further found that Plaintiff failed to allege that the search was in any way unrelated to legitimate penological objectives or that the search could have been conducted in a less restrictive manner. (*Id.* at 6.) Thus, the Court granted Riley's motion to dismiss under Federal Rule of Civil Procedure 12(c) and granted Plaintiff permission to file a motion for leave to amend. (*Id.* at 7.)

Thereafter, Plaintiff moved for leave to amend and Riley moved to dismiss. By Memorandum and Order dated December 17, 2003, the Court granted Plaintiff leave to amend, denied Riley's motion to dismiss, and accepted the Amended Complaint for filing, finding that Riley's arguments ultimately went to the factual merits of Plaintiff's claim and were not appropriate in the context of a motion for leave to amend. (Dec. 17, 2003 Memorandum and Order at 4-5.) The Amended Complaint arises out of the same October 31, 2000 search but this time, there is no mention of the female officer. Instead, Plaintiff now alleges that he was subject to an unjustified strip search and an assault. (Am. Compl. at 4, 12.) Specifically, Plaintiff alleges that the strip search was unauthorized because of the correction officers' negligence in allowing the tray to be stolen in the first instance. (*Id.* at 5-6.) He further claims that there was "no video camera present" during the search as opposed to other searches conducted the following day when a video camera was present. (*Id.* at 8.)

The only evidence proffered by Plaintiff as to the strip search is his deposition testimony and various affidavits and declarations, all written by Plaintiff. In his deposition testimony, Plaintiff stated that the strip search took place between three and four p.m. on October 31, 2000. (Pl.'s Dep. at 15.) He further stated that all of the inmates on his tier were searched for the missing tray, half on October 31st and the remaining half on the following day. (*Id.* at 15-16.) He conceded that he had been the subject of strip searches before at the Nassau County Correctional Center but that this search was different in that: (1) all prior searches were conduced in his cell with a video camera present but this one was conducted outside of his cell with no video camera; (2) the officers' misconduct in doing their job caused the search; and (3) although prior searches involved being "patted down," this search "was more like the anal,

touching the genitals. You know, it was thoroughly seeking, looking for this food tray." (*Id.* at 16-20) Finally, Plaintiff admitted that a plastic food tray could be made into a plastic knife or weapon that could be hidden on an inmate and that prison officials would have to conduct a more elaborate search if they were looking for such a weapon. (*Id.* at 21-22.)

Plaintiff further describes the search in one of his declarations as follows:

> I was told to step out of my cell and subjected to a strip frisk search/body cavity search. I complied with the direct order that was given to me by C.O. Evans #2107, meanwhile another officer enter[ed] my cell and began to search for the missing food tray. As I stood completely naked during the (body cavity search) process, on the second tier floor of housing unit "E-2-C," I felt humiliated, embarassed [sic] by this degrading situation. I felt as though, I was put on public display and being viewed by other inmates.

Pl.'s Aff. dated June 5, 2003 at 10.)

Defendants move for an order dismissing the Amended Complaint pursuant to Rule 56. Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to any of his Constitutional claims, Defendants' motion is granted.

## *DISCUSSION*

### I. *Summary Judgment Standards*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the

non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.     *Plaintiff has Failed to Raise a Genuine Issue of Material Fact that the Search Violated his Rights Under the Fourth Amendment*

"It is fundamental that persons are protected from unreasonable searches and seizures by the fourth amendment and that this right is enforceable against the states through the fourteenth amendment." *Covino v. Patrissi*, 967 F.3d 73, 77 (2d Cir. 1992) (citing *Ker v. California*, 374 U.S. 23, 30 (1963)). In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court ruled that "shakedown" searches of an inmate's cell did not violate the fourth amendment because prisoners have no fourth amendment privacy rights within the confines of their individual cells. *Id.* at 523. The Second Circuit has subsequently held "that inmates do retain a limited right to bodily privacy" under the fourth amendment, *Covino*, 967 F.2d at 77, and that "'the proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is reasonably related to legitimate penological interests.'" *Id.* (quoting *Harper v. Washington*, 494 U.S. 210, 223-24 (1990)). In *Covino*, the Second Circuit found that random visual body-cavity searches employed by a Vermont state prison whereby the inmates were required to remove all of their clothing, lift their genitals and spread their buttocks for a visual examination, and involving no touching of the inmates by the prison staff, did not violate the Fourth Amendment because they were reasonably

related to the state's legitimate interest in maintaining prison security. *Id.* at 79-80.

Here, the record reveals that the strip search was conducted pursuant to Nassau County Corrections Center guidelines which provide that the Nassau County Corrections Center may conduct searches and shakedowns to detect weapons. (Defs.' Not. of Mot. Ex. D.) Plaintiff does not contest the fact that a plastic tray was missing, that the tray could have been converted into a weapon, and that the purpose of the search was to locate the missing tray. Rather, Plaintiff's only argument concerning the alleged invalidity of the search is that Defendants were negligent for allowing the tray to be stolen in the first place.

As a initial matter, the Court notes that there is no evidence in the record to support Plaintiff's claim that Defendants were negligent. Moreover, whether Defendants were negligent or not in allowing the tray to be stolen has no bearing on the constitutionality of the search. *Cf. Daniels v. Williams*, 474 U.S. 327, 328 (1986) (finding that mere negligent act by a prison official cannot constitute a deprivation of life, liberty or property under the due process clause of the Fourteenth Amendment). Rather, the issue is whether the search was reasonably related to legitimate penological interests.

Here, Defendants have proffered evidence that the search was in fact related to legitimate penological interests, i.e., finding a potential weapon that could compromise the safety of the prison. There is no evidence in the record to contradict this conclusion. Nor is there any evidence in the record to suggest that Defendants used excessive force. In fact, Plaintiff does not claim any physical injury as a result of the search. (*See* Pl.'s Dep. at 5.) Accordingly, the Court finds that Plaintiff has failed to raise a question of fact as to his alleged Constitutional violation.

## CONCLUSION

For all of the above reasons, Defendants' motion for summary judgment is GRANTED and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, New York
   December 29, 2005

/s_____
DENIS R. HURLEY,
United States District Judge